# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

HECTOR A. SANTOS

VERSUS

J.W. GRAND, INC.

CIVIL ACTION

NO. 13-00559-SDD-RLB

## RULING

This matter is before the Court on a *Motion for Summary Judgment* filed by Defendant, J.W. Grand, Inc. ("Grand").[1] Plaintiff, Hector Santos ("Santos") has filed an *Opposition*[2] to which Grand filed a *Reply*.[3] For the following reasons, the Court grants in part and denies in part Grand's *Motion*.

## I.   BACKGROUND

Santos, who is Hispanic and of Salvadoran descent, has brought this lawsuit against his former employer, Grand, asserting harassment/hostile work environment and retaliation claims on the basis of his race and national origin under Title VII and the Louisiana Employment Discrimination Law ("LEDL").[4] Santos worked for Grand from May 19, 2009 until July 1, 2009 on the BASF Project. Santos, a carpenter, was part of a small crew led by Grand's foreman, Joseph Martinez ("Martinez"), who is Hispanic and of Spanish descent. According to Santos, he was subjected to derogatory comments by Martinez while they were both working on the jobsite. For instance, Santos contends that Martinez called him derogatory names, such as "wetback" and

---

[1] Rec. Doc. 27.
[2] Rec. Doc. 31.
[3] Rec. Doc. 32.
[4] Rec. Doc. 1.

"frijolero", and asked Santos if he had a place to live or if he was homeless.[5]    Santos'
former crew-member, Rondell Albert, claims to have heard Martinez make derogatory
comments to Santos several times per day for at least one week while working on the
BASF project.  Santos further claims to have reported Martinez's behavior to Preston
Pace, Grand's Supervisor, on at least four occasions, including his last day of
employment, but no action was taken and the derogatory statements continued.[6]  As a
result of the hostile working environment, Santos asserts that he was forced to end his
employment on July 1, 2009.[7]

On August 24, 2009, Santos timely filed a *Charge of Discrimination* with the
Louisiana Commission on Human Rights in which he reiterated his claims of race and
national origin discrimination against Martinez, specifically claiming that the derogatory
comments were made on May 19, 2009 and May 25, 2009.[8]  On April 24, 2009, the
EEOC issued a *Determination Letter* finding that Santos had been harassed and
subjected to a hostile work environment by his supervisor.[9]  The EEOC also found that,
although Santos had complained to his superintendent, Grand took no action to stop the
harassment, forcing Santos to quit.[10]  Subsequently, the EEOC issued a *Right to Sue
Letter* to Santos in which it stated that it had found reasonable cause to believe that
some violation had occurred.[11]  On November 7, 2012, Santos filed the pending
lawsuit.[12]

---

[5] Rec. Doc. 31-2, pp. 51; 60.
[6] Rec. Doc. 31-2, pp. 50-51.
[7] Rec. Doc. 1, p. 3.
[8] Rec. Doc. 31-1, p. 46.
[9] Rec. Doc. 31-1, pp. 14-15.
[10] Rec. Doc. 31-1, pp. 14-15.
[11] Rec. Doc. 31-1, p. 11.
[12] Rec. Doc. 1.  This case was originally filed in the Eastern District of Louisiana on November 7, 2012,
and subsequently transferred to the Middle District on August 26, 2013.  Rec. Doc. 15.

Grand now moves for summary judgment on Santos' federal and state harassment/hostile work environment and retaliation claims. Grand further argues that, as a matter of law, Martinez is not a supervisor; therefore, Grand may only be liable for harassment if Santos can prove it was negligent. Additionally, Grand raises several evidentiary challenges to the material offered by Santos to defeat the summary judgment motion. Considering the EEOC's finding of discrimination, the testimony of Santos' former crew member, the frequency of the derogatory statements, and the conflicting facts, Santos contends that summary judgment is unwarranted.

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[14] "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[15] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[16] However, the non-moving party's burden "is not

---

[13] Fed.R.Civ.P. 56(a) (West 2015).
[14] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, at 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).
[15] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, at 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, at 323-25, 106 S.Ct. at 2552)).
[16] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, at 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[17]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[18]  The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[19]  However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[20]  "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations ... to get to a jury without "any significant probative evidence tending to support the complaint."'"[21]

## III.    LAW AND ANALYSIS

In his Complaint[22], Santos has asserted harassment/hostile work environment and retaliation claims under both Title VII and the LEDL.  The Court's analysis of Santos' harassment/hostile work environment claims under the LEDL is the same as its analysis of Santos' claims under Title VII.[23]  However, the same is not true for Santos' retaliation claims.  This Court recently held that the Louisiana Legislature's 2014

---

[17] Willis v. Roche Biomedical Laboratories, Inc., 61 F.3d 313, at 315 (5th Cir. 1995) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).
[18] Pylant v. Hartford Life and Accident Insurance Company, 497 F.3d 536, 538 (5th Cir. 2007)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).
[19] Galindo v. Precision American Corp., 754 F.2d 1212, at 1216 (5th Cir. 1985).
[20] RSR Corp. v. International Ins. Co., 612 F.3d 851, at 857 (5th Cir. 2010)(citing Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998)).
[21] Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex., 40 F.3d 698, at 713 (5th Cir. 1994)(quoting Anderson, 477 U.S. at 249)(citation omitted)).
[22] Rec. Doc. 1.
[23] Claiborne v. HUB Enterprises, Inc., 918 F.Supp.2d 579, at n. 9 (W.D.La. 2013)("Louisiana's anti-discrimination statute, La. Rev. Stat. Ann. § 23:301 et seq., is 'substantively similar' to Title VII, and Louisiana courts routinely look to the federal jurisprudence for guidance." (quoting McCoy v. City of Shreveport, 492 F.3d 551, 556, n.4 (2007)(quoting Trahan v. Rally's Hamburgers, Inc., 696 So.2d 637, 641 (La.App. 1st Cir. 1997)).

amendments to the LEDL which create a cause of action for retaliation in employment based on race and national origin are not retroactive.[24] Considering that Santos' EEOC Charge and the filing of the pending lawsuit preceded the LEDL amendments,[25] the Court finds that Santos does not have a viable retaliation claim under the LEDL. Hence, Santos' retaliation claims shall be evaluated under Title VII.

A. Evidentiary Challenges

In its *Reply Brief*[26], Grand seeks to have the entirety of Santos' EEOC FOIA file[27] and deposition transcripts offered in their entirety stricken from the record because Santos has failed to articulate the manner in which such evidence supports his claims. The Court finds that Santos actually did identify those particular portions of his EEOC FOIA file and depositions that he deemed to support his claim.[28] Therefore, the content of these exhibits will not be stricken on these grounds.

In the alternative, Grand requests that the Court exclude those portions of the deposition transcripts and EEOC FOIA report that amount to inadmissible hearsay or opinion testimony, speculation, or conclusory facts, as opposed to being based on personal knowledge. While Grand puts forth this argument, it fails to identify which specific portions of these documents should be stricken. The Court is very well aware of its responsibility to only consider evidence that would be admissible at trial in

---

[24] In *Martin v. Winn-Dixie Louisiana, Inc.*, 2015 WL 1281943 (M.D.La. Mar. 20, 2015), Judge DeGravelles explained that the Louisiana Legislature amended La. R.S. 51:2256 to include retaliation claims under the LEDL on the basis of disability, race, color, religion, sex, national origin, or pregnancy, childbirth, and related medical conditions. In spite of the amendment, the *Martin* court found that plaintiff had no viable LEDL retaliation claim because her EEOC Charge and lawsuit were filed in 2013. The *Martin* court reasoned that because the amendment did not become effective until August 1, 2014, and "[n]o mention of intent to apply this amendment retroactively was made by the legislature," the plaintiff did not have a valid claim for retaliation under the LEDL. *Id.* at *8.

[25] Santos filed his *Charge of Discrimination* on August 24, 2009, and his lawsuit on November 7, 2012.

[26] Rec. Doc. 32.

[27] Rec. Doc. 31-1.

[28] For example, on page 2 of his memorandum in opposition, Santos directs the Court's attention to "EEOC FOIA File, pg. 14 of 46, Exhibit 'A'" and then again to "pg. 12 of 46 of Exhibit 'A.'" Rec. Doc. 31.

reaching a decision on a motion for summary judgment.[29]   The Court will apply this standard in conducting its analysis of the deposition testimony relied upon by both parties.

As for Santos' EEOC FOIA report, while the EEOC's report and determination letter are admissible under the business records hearsay exception, it does not apply to the underlying material collected during the EEOC's investigation.[30]   Instead, the underlying investigative material must be admissible on its own grounds.  Within the EEOC FOIA file, the Court finds that the EEOC's *Right to Sue* and *Determination Letters* are admissible under the business records exception.[31]   As for the remaining content, to the extent the file consists of letters,[32] a record log,[33] miscellaneous notes,[34] and income tax forms,[35] these documents cannot be used to defeat summary judgment because they are unauthenticated, not in the form of an affidavit, and do not indicate that they are made on personal knowledge as required by Rule 56(c)(4) of the Federal Rules of Civil Procedure.  Therefore, these documents will not be considered by the Court in its summary judgment analysis.   However, Santos' signed *Charge of Discrimination*[36] which is also included in the EEOC FOIA file, does satisfy these requirements and, therefore, is proper summary judgment evidence.

---

[29] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991)("Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial.").

[30] *Cruz v. Aramark Services, Inc.*, 213 Fed.Appx. 329, at 332 (5th Cir. 2007)(unpublished).

[31] Rec. Doc. 31-1, pp. 11; 14-15.  *DeCorte v. Jordan*, 497 F.3d 433, at 440 (5th Cir. Aug. 15, 2007)("As a general rule, 'EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings as probative of a claim of employment discrimination.'"(quoting *McClure v. Mexia Indep. Sch. Dist.*, 750 F2d 396, 400 (5th Cir. 1985)).

[32] Rec. Doc. 31-1, pp. 1-5; 10; 32 (facsimile); 37 (facsimile cover sheet); 43; 44.

[33] Rec. Doc. 31-1, pp. 6-9.

[34] Rec. Doc. 31-1, pp. 13; 35; 38-39.

[35] Rec. Doc. 31-1, pp. 33-34; 36.

[36] Rec. Doc. 31-1, pp. 16-21; 25-27; 45-46 (Santos' unsigned *Charge of Discrimination* is unauthenticated and will not be considered.  Rec. Doc. 31-1, p. 42).

Grand's final argument goes to the weight that the EEOC's *Determination Letter* should be afforded on summary judgment. It is Grand's position that, while the EEOC's determination of reasonable cause may be admissible evidence, the Court is not bound by the EEOC's finding. The Court agrees.[37] While the *Determination Letter* shall be deemed admitted, the Court will not treat it more favorably than any other evidence. Rather, the Court will consider the EEOC *Determination Letter* in light of all the summary judgment evidence to determine whether it creates a fact issue.

B. Harassment/Hostile Work Environment

Title VII provides that "[i]t shall be unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[38] "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination."[39] "The creation of a hostile work environment through harassment ... is a form of proscribed discrimination under Title VII."[40]

To establish a *prima facie* claim of hostile work environment, Santos must prove that he (1) belongs to a protected class; (2) was subjected to unwelcome harassment; (3) the harassment was based on his race and national origin; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer (Grand)

---

[37] *McClure v. Mexia Ind. Sch. Dist.*, 750 F.2d 396, 400 (5th Cir. 1985), reh'g and reh'g *en banc* denied.
[38] 42 U.S.C. § 2000e-2(a)(1).
[39] *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988)(citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417 (1975)).
[40] *Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2455 (2013)(Thomas, J., concurring)(citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64-65 (1986)).

knew or should have known of the harassment in question and failed to take prompt remedial action.[41] "'[W]here the harassment is allegedly committed by a supervisor with immediate (or successfully higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements listed above.'"[42]

In order for harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[43] To be actionable, the work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[44] "To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; [and] (4) whether it interferes with an employee's work performance."[45] "No single factor is determinative."[46]

Not all workplace harassment is actionable. The "'mere utterance of an ... epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment."[47] "A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious)

[41] *Scott v. Weber Aircraft*, 2015 WL 1746462, at *3 (5th Cir. Apr. 17, 2015)(citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).
[42] *Parker v. State of Louisiana Dept. of Educ. Special School Dist.*, 323 Fed.Appx. 321, at 325 (5th Cir. 2009)(quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001)).
[43] *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, at 78 (1998)(quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)(citations and internal quotation marks omitted)).
[44] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)(citations omitted).
[45] *DiLeo v. Lane*, 2014 WL 4726246, at *4 (M.D.La. Sept. 23, 2014)(citing *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).
[46] *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, at 399 (5th Cir. 2007)(citing *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).
[47] *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)(quoting *Meritor Savings Bank, FSB, v. Vinson*, 477 U.S. 57, 2404 (1986)).

will not amount to discriminatory changes in the 'terms and conditions of employment.'"[48] On the other hand, [u]nder the totality of circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment."[49]

For the purposes of this motion, it is undisputed that Santos belongs to a protected class based upon his race and national origin, that he was allegedly subjected to unwelcome harassment, that the alleged harassment was based on his race and national origin, and that Santos reported the alleged comments to Pace.[50] The points of contention between the parties are whether Martinez was, in fact, Santos' supervisor, and whether the alleged harassment affected a term, condition, or privilege of employment.

### 1. Supervisor-Status of Martinez

Employers are exposed to greater liability when an employee's unlawful harassment comes at the hands of a supervisor, as opposed to a co-worker. If the harassing employee is a victim's co-worker, then the employer is only liable if it was negligent in controlling the working conditions. In those instances, where the harasser is the supervisor and the harassment culminates in a tangible employment action, the employer is vicariously liable. In *Vance v. Ball State Univ.*, the Supreme Court resolved a conflict among lower courts by defining who qualifies as a supervisor in those cases

---

[48] *Faragher v. City of Boca Raton*, 524 U.S. 775, at 788 (1998)(citations omitted).
[49] *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, at 400 (5th Cir. 2007).
[50] Grand in its *motion* acknowledges that the parties disagree about whether Santos was subjected to unwelcome harassment and whether Santos reported the alleged harassment to Pace. Nevertheless, Grand argues that, even assuming these points to be true solely for the purpose of this *motion*, Santos cannot satisfy the remaining element that the alleged harassment was sufficiently severe or pervasive to constitute actionable harassment. Rec. Doc. 27-1, p. 6.

where employees assert Title VII claims for workplace harassment.[51] The *Vance* Court held that an employee is a supervisor "when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"[52] The *Vance* Court further explained that with its definition of "supervisor", courts could make pre-trial legal determinations (i.e., at summary judgment) when supervisor status was at issue.[53]

In the pending matter, the parties disagree about Martinez's supervisor status. Grand has presented evidence that shows Preston Pace, the Superintendent on the BASF Project, possessed the authority to make tangible employment actions with respect to Santos' employment.[54] While Martinez could direct Santos and other crew members on their daily tasks, he lacked the authority that Pace had to hire, terminate, promote, or reassign any employees.[55] Martinez also lacked the authority to make any employment decision that would cause a significant change in Santos, or any other employee's, benefits.[56] In response, Santos points to the testimony of former co-worker, Rondell Albert, who summarily stated that it was clear to him that Martinez was his supervisor.[57] An individual's "belief" that someone is a "supervisor", without more, does not make it so. As delineated in *Vance*, in order to be a supervisor, one must have the authority to make tangible employment actions. The Court finds that Santos

---

[51] *Vance v. Ball State Univ.*, 133 S.Ct. 2434 (2013).
[52] *Id.*,at 2443 (2013)(quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, at 761 (1998)).
[53] *Id.* at 2450.
[54] Rec. Doc. 27-4.
[55] Rec. Doc. 27-4.
[56] Rec. Doc. 27-4.
[57] Rec. Doc. 31-3, p. 47.

has failed to produce any evidence that shows that Martinez had any authority to make tangible employment decisions so as to satisfy the jurisprudential definition of supervisor as set forth in *Vance*. Accordingly, the Court finds that Martinez was not Santos' supervisor, and the negligence standard applies.

### 2. *Severe or Pervasive*[58]

Of the elements necessary to establish a *prima facie* claim of hostile work environment, the only factor in dispute is whether the alleged harassment was sufficiently severe or pervasive to affect a term, condition, or privilege of employment. Grand contends that the alleged verbal abuse does not rise to the level of severe or pervasive necessary to support his hostile work environment claim due to the nature of the comments and their infrequency. Santos disagrees.

In his EEOC *Charge of Discrimination*, Santos described only two specific dates on which Martinez allegedly made harassing comments. According to his Charge, "[o]n May 19 and on May 25 of 2009, Mr. Joe Martinez (White), Foreman made various derogatory comments by calling me 'wetback' and that I should return from where I came from."[59] He also claimed Martinez kept telling him "I don't want to see you anymore wetback."[60] During his deposition, Santos claimed that these were not the only days on which Martinez made such offensive comments, but he was unable to specify when these statements had been made.[61] For instance, Santos testified that, even though he told Martinez he was not a Mexican, Martinez continued to harass

---

[58] The Court notes that neither party delineated in their memoranda which statements were directed toward Santos' race and which were directed toward Santos' national origin.
[59] Rec. Doc. 31-1, p. 46.
[60] Rec. Doc. 31-1, p. 46.
[61] Rec. Doc. 27-5, p. 5. "Q: Were these the only two days on which this – these type[s] of comments were made? A: No."

11

him.[62] Santos further testified that Martinez asked if he had a place to live or if he was homeless and slept under the streets or under a bridge.[63]

Santos did testify to reporting the offensive statements to Pace on four or five occasions.[64] Santos claimed that he first reported the alleged harassment to Pace on his third or fourth day of employment.[65] At that time Santos told Pace that Martinez was calling him a "wetback" and a "frijolero," and he wanted to send Santos back to his country of origin.[66] Santos testified that he made his second complaint to Pace one week later, claiming that Martinez said the following: "we were just starving people, we were like animals and that we didn't understand that we weren't welcome here and that we should return to our country, and that [Santos] should return to [his] country, and if [Santos] didn't, [Martinez] would send [Santos] back."[67] Approximately 10 days later, Santos reported to Pace that the phrase "Mexicans, you must return" was written on the bathroom wall.[68] Santos admittedly had no proof that Martinez had actually written this statement, and he simply assumed Martinez had done so.[69] Santos testified that he made his final complaint to Pace on July 1, because Martinez had not given him a ride, like the other crew members, to or from the cafeteria for lunch.[70] Instead, Santos had to walk to and from lunch and eat by himself.[71] On his way back to speak with Pace

---

[62] Rec. Doc. 31-2, pp. 59-60.
[63] Rec. Doc. 31-2, p. 60.
[64] Rec. Doc. 27-5, p. 9.
[65] Rec. Doc. 27-5, p. 9.
[66] Rec. Doc. 27-5, pp. 11-12.
[67] Rec. Doc. 27-5, pp. 13.
[68] Rec. Doc. 27-5, pp. 13-14.
[69] Rec. Doc. 27-5, p. 15.
[70] Rec. Doc. 27-5, p. 16.
[71] Rec. Doc. 27-5, p. 16.

about the situation, Santos claims to have made the decision to quit due to the circumstances with Martinez.[72]

Santos offers the following testimony of his former crew-member, Rondell Albert, to corroborate his claims.

> Q:   During that period of time when you worked with Mr. Santos at BASF, how often would you hear or did you hear Joe Martinez say things that you thought were discriminatory toward Mr. Santos?
> A:   We worked tens. So we would be there at 6:00 and get off at like 4:30. So I would hear him say at least four times a day.
> Q:   Every day?
> A:   Every day. Every day. At least three, four times a day.
> Q:   From the first day that you started working there until the last day Mr. Santos was there?
> A:   I ain't going to say the first day. I will say about a week or two, something like that. A week, two weeks until I got in there and we got to working about a week or two until they started.[73]

According to the time sheets in the record, Albert worked ten-hour days for a total of eight (8) days, June 1-4 and June 8-11, 2009, on Grand's BASF project.[74]  Albert also testified that Martinez told the story about why people, such as Santos, were called "wetback[s],"[75] and that Martinez would not give Santos rides to the cafeteria or let him get water from the water cooler at certain times.[76]

During his deposition, Albert also verified that he had written a statement approximately four or five months after he had stopped working for Grand, in which he claimed that he overheard Martinez called Santos a "wetback", that Mexicans "aint

---

[72] Rec. Doc. 27-5, p. 17. ("Then I just decided I just better go home because imagine this, he was supposed to take me to eat with the others, but he didn't. He took the other group and left me there, and so I had to go by myself to eat....I was returning from the cafeteria to the office to talk to [Pace] and tell [Pace] I was leaving. I was leaving the company.").
[73] Rec. Doc. 31-3, pp. 42-43.
[74] Rec. Doc. 27-7. The time sheets reflect that Albert worked ten hours every day, except for one in which he worked only six days. Therefore, Albert worked a total of 76 hours over these eight days. The time sheets were verified by Ross Grand. Rec. Doc. 27-4, p. 2.
[75] Rec. Doc. 31-3, p. 48.
[76] Rec. Doc. 31-3, p. 26.

worth nothing they need ta go too home depot and wait for work wit all the other Mexicans," and that "Mexican was so much in a rush to leave they swam naked."[77] He also claimed that Martinez had told him he "hated" Santos.

Grand invites the Court to make credibility determinations as to the testimony of Santos and Albert by pointing to, among other things, their time sheets. While Santos claims to have been harassed by Martinez on May 25, 2009, Santos' time sheet indicates that this was the only day of the week he did not work on the BASF Project.[78] Grand also argues that Albert's testimony is likewise "undeniably false" because, in spite of Albert's claims to have worked for Grand for months and that Santos quit one week before Albert was laid off, his time sheets show that he actually only worked eight days for Grand, with his last day preceding Santos' final day on the job.[79] In making this argument, Grand overlooks the fact that Albert also testified that he worked a number of temporary positions through "a company called Lofton, which gave me the J.W. Grand. But I was doing jobs here, there a week, two weeks, a month here, a month there, stuff like that."[80]

Grand also offers the *Affidavits* of several former crew members on the BASF project who all state the same thing--they never heard Martinez use derogatory comments towards Santos or any other Hispanic employees while on the BASF project or any other project.[81] They all further attest to the fact that, on Santos' last day, he "disappeared and the crew searched but could not find him" and that, when Santos

---

[77] Rec. Doc. 31-3, p. 17; Rec. Doc. 31-4.
[78] Rec. Doc. 27-6, p. 2.
[79] Rec. Doc. 27-1, p. 3; Rec. Doc. 27-7.
[80] Rec. Doc. 27-8, p. 3.
[81] Rec. Doc. 27-10, p. 2, ¶¶4-5 (Affidavit of James Tesch); 27-11, p. 2, ¶¶4-5 (Affidavit of Greg Duchamp); Rec. Doc. 27-12, p. 2, ¶¶4-5 (Affidavit of Cecil Wood); Rec. Doc. 27-13, p. 2, ¶¶4-5 (Affidavit of Jimmy Irvin); Rec. Doc. 27-14, p. 2, ¶¶4-5 (Affidavit of Stan Wooley).

returned, "he stated that he had gone to lunch on his own."[82]  Similarly, Martinez denied making the alleged statements[83] and that, being part Spanish himself, he has no problems with Spanish people.[84]  Martinez also denied prohibiting Santos from getting water from the water cooler.[85]  Like the other crew members, Martinez also testified that, on Santos' last day, he had gone missing and, after the team spent approximately ten minutes looking for him, Santos re-appeared, stating he had gone to lunch.[86] Martinez subsequently admonished Santos for leaving the work site without informing anyone.[87]  Then, Martinez recalled Santos approaching him in an aggressive manner, as if he wanted to fight.[88]  When Martinez asked Santos what he wanted to do, Santos told him he wanted to go home.[89]  Martinez informed Pace of Santos' request and had no further interaction with Santos.[90]  Overall, Martinez maintains that both Santos and Albert are lying.[91]

Pace also testified that he never met with Santos about the alleged harassment and stated that Santos was "lying."[92]  Pace learned from Martinez that Santos had "disappeared" on his last day and crew members looked for him.[93]  Pace testified that

---

[82] *Id.* at ¶6.
[83] Rec. Doc. 27-9, p. 13, "Q: Did you ever tell Mr. Santos that you wanted to send him back to his country of origin? A: No. Never. Q: Send him back to El Salvador? A: No. Never. Q: Call him a Mexican? A: No."; p. 15, "Q: And it's not your opinion – that Mexicans are starving people and should go back to their country or El Salvadorians are starving people, and should go back to their country? A: No, not at all."; p. 16, "Q: Did you ever see anything written on the bathroom wall? A: No."; p. 18, "Q: So you never made any derogatory comments whatsoever to Hector Santos? A: No. Q: You never made any observations to Hector Santos regarding his heritage? A: No."
[84] Rec. Doc. 27-9, p. 11.
[85] Rec. Doc. 27-9, p. 18.
[86] Rec. Doc. 27-9, pp. 7-8.
[87] Rec. Doc. 27-9, p. 8.
[88] Rec. Doc. 27-9, p. 8.
[89] Rec. Doc. 27-9, p. 8.
[90] Rec. Doc. 27-9, pp. 8-9.
[91] Rec. Doc. 27-9, p. 10. "Q: Both of these individuals say that you were repeatedly calling Hector Santos a 'Wetback'? A: And that's a lie. Q: So both of them are lying? A: Most definitely."
[92] Rec. Doc. 27-15, pp. 3-6.
[93] Rec. Doc. 27-15, p. 7.

Santos did not tell him about the alleged harassment by Martinez until Santos had already quit and Pace was driving him to the plant's gate.[94] Upon learning of the allegations, Pace asked if Santos wanted to "go back and hash it out," but he said "no, I quit."[95]

In reviewing the evidence offered by the parties, the Court finds that, contrary to Grand's repeated assertions otherwise, in order to grant the summary judgment motion at this stage, the Court would be required to make credibility determinations and weigh evidence on the key issues in this case regarding the witnesses and the frequency and nature of the alleged harassment.[96] It is well established that these are inappropriate considerations for the Court to make at the summary judgment stage. Therefore, when the Court considers the appropriate summary judgment evidence in a light most favorable to Santos, it finds that Santos has presented sufficient evidence to create a genuine issue of material fact as to his hostile work environment claim.

In particular, the evidence shows that on two specific dates, May 19 and May 25, 2009, Martinez allegedly called Santos a "wetback." Although Santos could not specify the actual dates on which he had been subject to additional harassment, he testified to reporting these statements and others to his supervisor, Pace, on at least four occasions. Albert's testimony also shows that, on at least four days of his employment at Grand, he heard Martinez make discriminatory statements to Santos, three or four times a day. These statements included the term "wetback" and "pepper".

---

[94] Rec. Doc. 27-15, p. 9.
[95] Rec. Doc. 27-15, p. 9.
[96] *Anderson*, 477 U.S. at 255; *Aikins v. Warrior Energy Services Corp.*, 2015 WL 1221255, at *7 (S.D.Tx. Mar. 17, 2015); *Ramos v. Swiftships Shipbuilders, LLC*, 2015 WL 539694, at *5 (W.D.La. Feb. 6, 2015).

Isolated remarks, such as "wetback", directed at Santos' national origin, individually do not constitute pervasive harassment actionable under Title VII.[97] The "'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' does not affect the terms[,] conditions, or privileges of employment to a sufficiently significant degree to violate Title VII."[98] However, "[a] regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII."[99] Grand relies on two Fifth Circuit decisions to support its position that the frequency of Martinez's comments is insufficient to support Santos' hostile work environment claim.[100] After reviewing these cases, the Court finds that only one, *E.E.O.C. v. Nexion Health at Broadway, Inc.*, involves allegations of a racially hostile working environment.[101]

In *Nexion*, the plaintiff, an African American nursing assistant, claimed that his employer had subjected him to a racially hostile work environment. Plaintiff worked in a nursing home that offered assistance primarily to individuals with mental conditions such as dementia, schizophrenia, and Alzheimer's disease. Plaintiff alleged that a 70 year-old schizophrenic, Hispanic resident called him racially offensive words, including the word "nigger" three to four times a week over a number of months. The patient also

---

[97] *Harilall v. University Health System Development Corp.*, 174 F.3d 197, at *4 (5th 1999).
[98] *Id.* (quoting *Jones v. Flagship Intern.*, 793 F.2d at 720) (quoting *Rogers v. Equal Employment Opportunity Comm'n*, 454 F.2d at 238); *see Faragher v. City of Boca Raton*, 118 S.Ct. 2275, 2283 (1998) (" '[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' ") (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1003 (1998)) (citation omitted).
[99] *Vasquez v. Johnson*, 2014 WL 2438380, at *17 (N.D.Tex. May 30, 2014)(citing *E.E.O.C. v. WC & M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007)(citing *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 1996)).
[100] In addition to the two Fifth Circuit decisions, Grand relied upon two nonbinding decisions from the Southern District of New York and the Third Circuit Court of Appeal.
[101] *E.E.O.C. v. Nexion Health at Broadway, Inc.*, 199 Fed.Appx.351 (5th 2006).

made disparaging remarks about whites and Hispanics during the same time period.[102] In finding that the frequency of the statements failed to support the plaintiff's hostile work environment claim, the Fifth Circuit found that "[a]lthough these were more than isolated incidents of harassment, they were not so frequent as to pervade the work experience of a reasonable nursing home employee, especially considering their source. [The resident's] harassment was not physically threatening or humiliating; it consisted only of offensive utterances, although those utterances were quite offensive."[103] In making its determination, the Fifth Circuit considered the unique nature of the plaintiff's work and the condition of his alleged harasser. Unlike *Nexion*, we are not dealing with an individual with a mental health condition or a plaintiff-caretaker who must "absorb the occasional verbal abuse from such patients."[104] Therefore, the Court finds *Nexion* to be factually dissimilar to the instant matter. Instead, the Court finds the recent decision out of the Northern District of Texas, *Vasquez v. Johnson*, to be more on point.[105]

In *Vasquez*, the plaintiff, a Hispanic male of Salvadoran descent and national origin, claimed that, in his six months of employment as an electrical engineer, his supervisors discriminated against him on account of his race and national origin by subjecting him to "disparaging remarks about his race and national origin [and] relentless badgering, harassment, and humiliation."[106] He claimed his work performance was over scrutinized, he received negative performance evaluations, and

---

[102] *Id.* at 352. The plaintiff allegedly reported the statements to supervisors, but no action was taken. He was subsequently fired for allegedly threatening the harassing-patient and lying about the interaction to his employers.
[103] *Id* at 353-54.
[104] *Id.* at 354.
[105] *Vasquez v. Johnson*, 2014 WL 2438380 (N.D.Tex. May 30, 2014).
[106] *Id.* at *1.

a reduction in job duties.[107] Vasquez specifically alleged that his supervisor had called him a "wetback" several times between April and September of 2008 and that, on one occasion, his supervisor told him that "Salvadorans are liars." He further alleged reporting the incidents, but he could not recall when or what he said. In finding that these individual derogatory comments were not particularly severe enough to create a genuine issue of material fact as to Vasquez's hostile work environment claim, the court noted that it must also consider the frequency by which Vasquez's supervisor called him a "wetback" and stated "Salvadorians are liars."[108] In his discovery responses, Vasquez stated that his supervisor had called him a "wetback" on five different occasions: "(1) April 21, 2008; (2) May 29, 2008; (3) June 21, 2008; (4) July 10, 2008; and (5) August 8, 2008."[109] His discovery responses also reflected that Vasquez's supervisor had told him that "Salvadorans are liars" on July 8, 2008.[110] In finding that Vasquez's hostile work environment claim survived summary judgment, the court held: "Given the number of times these racial comments were made in a short, five-month period, the court determines that these actions amount to more than simple teasing, offhand comments, and isolated incidents, and that a genuine dispute of material fact is established as to Plaintiff's hostile work environment claim."[111]

Like the court in *Vasquez*, the Court finds that it is the frequency of the statements directed at Santos that helps to keep his hostile work environment claim alive. The evidence in this case shows that, on two specific dates identified by Santos, Martinez called him a "wetback" and told Santos he should return to El Salvador. On at

---

[107] *Id.*
[108] *Id.* at *16.
[109] *Id.* at *17.
[110] *Id.*
[111] *Id.*

least four other days, Albert, who worked on the BASF Project with Santos, testified to hearing Martinez call Santos a "wetback" three to four times per day and that Martinez refused to give Santos rides to the cafeteria or allow him to get water from the water cooler. While Santos could not specifically identify dates when Martinez made similar derogatory statements, he was able to identify approximate time periods when he made his complaints to Pace, and the content of Martinez's statements, including threats of sending Santos back to his country if he did not elect to return on his own and the graffiti on the bathroom wall. On his final day of work, Santos testified that Martinez did not give him a ride along with the other crew members to lunch, as he was required to do. When these separate incidents of harassment are considered together in the short two (2) month time span at issue, and in light of the fact that Martinez and Santos were in constant contact while working on the BASF project, the Court finds that there is a genuine issue of material fact as to whether the harassment Santos experienced was so severe or pervasive as to alter a condition of his employment.

Accordingly, Grand's motion shall be denied as to Santos' hostile work environment claims based on race and national origin under Title VII and the LEDL.

C. Title VII Retaliation

Grand also moves for summary judgment on Santos' retaliation claim because Santos cannot show that he suffered an adverse employment action, or was constructively discharged. In response, Santos failed to present any argument, or point to any evidence, to oppose Grand's position. The law is clear that "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is

waived and cannot be considered or raised on appeal."[112] Accordingly, Grand's motion for summary judgment on Santos' remaining Title VII retaliation claims is hereby granted. Santos' retaliation claims shall be dismissed with prejudice in their entirety.

## IV. CONCLUSION

Accordingly, the *Motion for Summary Judgment*[113] filed by Defendant J.W. Grand is hereby GRANTED IN PART and DENIED IN PART.

J.W. Grand's Motion is GRANTED as to Joseph Martinez's status as a non-supervisor.

J.W. Grand's Motion is DENIED as to Plaintiff Hector A. Santos' claims of harassment/hostile work environment based on race and national origin under Title VII and the LEDL.

J.W. Grand's Motion is GRANTED as to Plaintiff Hector A. Santos' retaliation claims brought under Title VII and the LEDL. The Court hereby dismisses these claims with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>May 29, 2015</u>.

JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[112] *Cox v. Columbia Cas. Co.*, 2014 WL 29456, at *10 (M.D.La. Jan. 3, 2014)(quoting *Keenan v. Tejada*, 290 F.3d 252, 262 (5th Cir. 2002).
[113] Rec. Doc. 27.